UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHY ACAB, an individual; and RICHY ACAB, JR., an individual,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>CHENROSA LLC, a Florida limited liability company; JOSEPH D'ALFIO, an individual; and DOES 1 through 20,<br><br>　　　　　　Defendants. | Case No.: 3:23-cv-00994-BEN-AHG<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFFS' MOTION TO REMAND; and**<br><br>**(2) GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION.**<br><br>**[ECF Nos. 3,4]** |

On April 13, 2023, Plaintiffs Richy Acab and Richy Acab, Jr. ("Plaintiffs") filed a civil complaint in the San Diego Superior Court against Defendants Chenrosa, LLC ("Chenrosa"), Joseph D'Alfio and DOES 1 through 20 (collectively, "Defendants") alleging five claims for relief. ECF No. 1-2 ("Compl."). On May 30, 2023, Defendant Chenrosa removed the action to this Court on several grounds, one being jurisdiction pursuant to 9 U.S.C. §§ 203, 205. ECF No. 1.

Before the Court are two motions—a motion to remand this action to state court filed by Plaintiffs, and a motion to compel arbitration and dismiss the complaint filed by Chenrosa. ECF Nos. 3, 4. Both motions are fully briefed. *See* ECF Nos. 9-12. Both

motions were submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure. *See* ECF No. 13. For the reasons set forth below, the Court **DENIES** Plaintiffs' motion to remand and **GRANTS** Defendant's motion to compel arbitration.

## I. BACKGROUND

Plaintiffs, citizens of the Philippines, were residing and working out of the U.S. Port in Pago Pago, American Samoa before signing on to Defendant's Vessel. Compl. ¶¶ 2-3; ECF No. 4-2 ¶¶ 4-5, Decl. of Richy Acab Sr. ("RAS Decl."). Plaintiff Acab Sr. was hired to work on the engine of the F/V Evelina Da Rosa (the "Vessel") in June 2021, with repairs completed by July 2021. Compl. ¶ 5; RAS Decl. ¶¶ 5-6. After the repairs were completed, the Vessel departed American Samoa for the intended fishing ground with both Plaintiffs aboard working as crew. RAS Decl. ¶ 6. However, the main engine broke down one day into the journey and the Vessel was towed back to Pago Pago. *Id*. Afterwards, a plan was made to tow the Vessel to Honolulu for repairs and then immediately leave for the next fishing trip. *Id*. ¶ 7-8. Plaintiffs, along with most of the crew, agreed to accompany the Vessel to Honolulu and onto the next fishing trip. *Id*. The Vessel left Pago Pago for Honolulu on August 3, 2021. RAS Decl. ¶ 9. In April 2022, the Vessel was still docked in Honolulu. Compl. ¶ 12.

On April 1 and 2, 2022, Plaintiffs were ordered to empty the Vessel's diesel fuel settling tank of diesel sludge. *Id*. During this process, Richy Acab Sr. had to physically enter the tank to shovel and sweep the sludge into a bucket to be hauled out. *Id*. The diesel tank contained toxic fumes and was not well ventilated. *Id*. Richy Acab Sr. alleges he was not provided any protective equipment while he performed this task. *Id*. Richy Acab Sr. alleges he suffered permanent damage to his heart because of exposure to the toxic fumes and he needed to seek life-saving medical treatment at a hospital. *Id*.; RAS Decl. ¶ 3. Richy Acab Sr. spent approximately two weeks in the hospital recuperating. *Id*. This event is referred to as the "Incident." Compl. ¶ 12; RAS Decl. ¶ 3.

1  Relevant here, Plaintiffs claim they were not provided their employment
2  agreements until August 4, 2021 (the first day after leaving Pago Pago for Honolulu).
3  RAS Decl. ¶ 10; ECF No. 4-3 at ¶ 8, Declaration of Richy Acab Jr. ("RAJ Decl."). 
4  Plaintiffs allege they were instructed to date the document August 3, 2021 not August 4,
5  2021.  RAS Decl. ¶ 12; RAJ Decl. ¶ 8.

## II. LEGAL STANDARDS

7  This case concerns written maritime employment agreements containing
8  arbitration clauses.  Plaintiffs do not dispute that they signed the written employment
9  agreements which Chenrosa attached to its motion to compel.  *See* ECF No. 3-2,
10 Declaration of Irene Chen ("Chen Decl.") Exhibit A (Richy Acab Sr. Agreement),
11 Exhibit B (Richy Acab Jr. Agreement).  As Plaintiffs are not U.S. citizens, the arbitration
12 clause is analyzed under the Convention on the Recognition and Enforcement of Foreign
13 Arbitral Awards, implemented in 9 U.S.C. §§ 201-208 ("the New York Convention" or
14 "the Convention").  *See also Lindo v. NCL (Bahamas), Ltd*., 652 F.3d 1257, 1262-63
15 (11th Cir. 2011).

16  <u>A. Motion to Remand</u>

17  A motion to remand challenges the removal of an action.  *Moore-Thomas v. Alaska*
18 *Airlines, Inc*., 553 F.3d 1241, 1244 (9th Cir. 2009).  In general, a state civil action may be
19 removed to federal court only if, at the time of removal, it is one that initially could have
20 been brought in federal court.  *Miller v. Tri Marine Fish Co*., 16-cv-2203-JAK-SSx, 2016
21 WL 3545523 at *3 (C.D. Cal. Jun. 28, 2016) (citing 28 U.S.C. § 1441(a)).  The removing
22 party has the burden of establishing that removal was proper.  *Gaus v. Miles, Inc*., 980
23 F.2d 564, 566 (9th Cir. 1992).  For cases removed under the New York Convention,
24 district courts are granted "remarkably broad removal authority."  *Infuturia Global Ltd. v.*
25 *Sequus Pharm., Inc*., 631 F.3d 1133, 1138 n.5 (9th Cir. 2011) (*citing Beiser v. Weyler*,
26 284 F.3d 665, 674 (5th Cir. 2002) ("[E]asy removal is exactly what Congress intended in
27 § 205.")).  Section 205 is triggered by "just about any suit in which a defendant contends

1  that an arbitration clause falling under the Convention provides a defense." *Id*. at 1138
2  (*citing Beiser*, 284 F.3d at 669).

3     B. Motion to Compel Arbitration

4     The Convention "provides two causes of action in federal court for a party seeking
5  to enforce arbitration agreements covered by the convention: (1) an action to compel
6  arbitration… and (2) at a later stage, an action to confirm an arbitral award[.]" *Lindo*,
7  652 F.3d at 1263 (internal citation omitted).  When considering a motion to enforce an
8  arbitration clause pursuant to an agreement covered by the Convention, a court "*shall…
9  refer the parties to arbitration unless* it finds that the said agreement is null and void,
10 inoperative or incapable of being performed." *Id*. (citing Convention, art. II(3))
11 (emphasis added).  *See also Bautista v. Star Cruises*, 396 F.3d 1289, 1301 (11th Cir.
12 2005).

### III. DISCUSSION

14     Defendant Chenrosa moves to dismiss Plaintiffs' complaint and enforce the
15 arbitration clause in their employment agreements.  ECF No. 3, "Compel Mot."
16 Plaintiffs oppose this motion on the ground that the employment agreements are void.
17 ECF No. 9, "Compel Oppo."  at 11-16.  Plaintiffs move to remand the case on essentially
18 the same grounds, that removal was improper because the employment agreements are
19 void.  ECF No. 4, "Remand Mot." at 10-15.  Defendant Chenrosa argues the narrow
20 jurisdictional analysis involved in removal and enforcement of an arbitration clause does
21 not encompass inquiry into the "enforceability" of the agreements.  ECF No. 10,
22 "Remand Oppo." at 5-6.

23     A. Motion to Remand—Jurisdiction Inquiry

24     Federal district courts have subject matter jurisdiction over actions or proceedings
25 falling under the New York Convention.  9 U.S.C. §§ 202-203; *Hayday Farms, Inc. v.
26 FeeDx Holdings, Inc.*, 55 F.4th 1232, 1239 (9th Cir. 2022).  The Convention further
27 states, "Where the subject matter of an action or proceeding pending in a State court
28 relates to an arbitration agreement or award falling under the Convention, the defendant

or defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States[.]" 9 U.S.C. § 205. "[T]he plain language of § 205 provides federal courts with remarkably broad removal authority." *Infuturia*, 631 F.3d at 1138 n.5 (citation omitted). Accordingly, a district court is said to have federal jurisdiction under the Convention where: (1) an arbitration agreement exists which falls under the Convention; and (2) the agreement relates to the plaintiff's suit. *Miller*, 2016 WL 3545523 at *4 (citation omitted). An arbitration agreement "falls under the Convention" if four jurisdictional prerequisites are met: (1) there is a written agreement to arbitrate; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship that is considered commercial; and (4) a party to the agreement is not an American citizen. *Bautista*, 396 F.3d at 1294.

Plaintiffs make three general challenges to removal: (1) the void arbitration agreements do not legally exist to confer subject matter jurisdiction; (2) Plaintiff Richy Acab Jr.'s tort claim does not arise from his purported agreement; and (3) Chenrosa did not obtain the consent of co-Defendant Joseph D'Alfio prior to removal. Remand Mot. at 10, 20-23. These arguments will be addressed in reverse order.

Plaintiffs argue Chenrosa must submit written proof of the unanimous consent by all Defendants to make removal proper. Remand Mot. at 23 (*citing Proctor v. Vishay Intertechnology, Inc.*, 584 F.3d 1208, 1224-25 (9th Cir. 2009)). In response, Chenrosa argues: (1) the Convention does not require consent of all Defendants prior to removal; and (2) Defendant Joseph D'Alfio has never been served. Remand Oppo. at 14. The first argument is both sufficient and convincing. Plaintiffs' consent argument relies on the text of the removal statute, which states, "When a civil action is removed *solely* under section 1441(a)…" 28 U.S.C. § 1446(b)(2)(A) (emphasis added). However, Defendant Chenrosa removed the action under 9 U.S.C. § 205, as well as 28 U.S.C §§ 1333, 1441(a) and 1446. *See* ECF No. 1, Notice of Removal. In other words, "[b]ecause removal in

this case was effectuated under 9 U.S.C. § 205, the traditional diversity removal provisions of 28 U.S.C § 1441 do not apply." *Infuturia*, 631 F.3d at 1137.

Plaintiffs next argue that Plaintiff Richy Acab Jr.'s tort claim does not "relate" to any purported agreement because intentional torts are not seen as "foreseeable result[s] of the performance of the parties' contractual duties or [the plaintiffs'] services as … employees." *Maglana v. Celebrity Cruises, Inc*., No. 20-14206, 2022 WL 3134373 at *4 (11th Cir. 2022) (*citing Doe v. Princess Cruise Lines, Ltd*., 657 F.3d 1204, 1219 (11th Cir. 2011)).  The Court is not convinced these cases are directly applicable.

First, while Plaintiffs describe Richy Acab Jr.'s tort claim as "intentional infliction of emotional distress" in the moving papers, it is pled as a claim for retaliatory discharge in the complaint.  *See* Remand Mot. at 20; Compl. at ¶¶ 34-39.  This shifts the focus to the remedies Plaintiff seeks instead of the factual basis of his claim.  But it is the factual basis of the claim, not just its nature, that is determinative.  Plaintiffs' cited authority does not suggest otherwise.  In *Maglana*, plaintiffs' tort claims were based on their confinement to a cruise ship for months *after* their employment ended.  *Maglana*, 2022 WL 3134373 at *4-5.  In *Doe*, plaintiff's claims were based on a sexual assault by a coworker, which occurred while she was employed on a cruise ship.  *Doe*, 657 F.3d at 1209-10.  The logic of these cases does not flow into the proposition that a claim for wrongful discharge from employment cannot relate to that employment just because it is a tort.  "The phrase 'relates to' is plainly broad, and has been interpreted to convey sweeping removal jurisdiction in analogous statutes …. Nothing in § 205 urges a narrower construction." *Infuturia*, 631 F.3d at 1138.

Finally, the Court agrees with Defendant that, for the purposes of determining jurisdiction, the limited inquiry does not include whether the agreement is valid and enforceable.  The district court in *Miller* also noted this issue, stating, "Although Plaintiff presents several colorable arguments in support of the claim that the arbitration agreements at issue may not be enforceable, they apply to the enforceability of the agreements, not their presence.  The latter is a sufficient basis to establish initial

jurisdiction under § 205." *Miller*, 2016 WL 3545523 at *5-6. *Miller* reached this conclusion by comparing the text of the removal provision and the enforcement provision of the Convention, noting "The [enforcement provision] contemplates that only a court 'seized of' the suit will turn to the question whether the arbitration clause shall be enforced." *Id*. at *6. This Court agrees. Accordingly, the Court concludes Defendant has met its burden to show removal was proper under 9 U.S.C. § 205.

### B. Motion to Compel—Enforcement Inquiry

Plaintiffs argue the employment agreements are "void" for two reasons: (1) the agreements violate several federal statutes relating to employment contracts of seamen; and (2) the plaintiffs were not able to understand the agreements due to limited English proficiency. Compel Oppo. at 11-19. To bolster these arguments, Plaintiffs argue that the "federal policy in favor of enforcing arbitration agreements" has been overturned in the Supreme Court decision in *Morgan v. Sundance*, 596 U.S. 411 (2022). Plaintiff argues *Morgan*, combined the Ninth Circuit's comment thereon in *Armstrong v. Michaels*, negates the case law on which Chenrosa relies. Compel Oppo. at 9 (*citing Armstrong v. Michaels Stores Inc*., 59 F.4th 1011 (9th Cir. 2023)). Defendant Chenrosa responds that a searching inquiry into the contract's validity and formation is not appropriate at this stage, and the reach of *Morgan* and *Armstrong* is far more limited than Plaintiffs claims. ECF No. 12, Compel Reply at 1-5.

#### 1. *Morgan v. Sundance* & *Armstrong v. Michaels*

In *Morgan*, the Supreme Court held "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." 596 U.S. at 418. *Morgan* concerned a defendant who engaged in several months of litigation "as if no arbitration agreement existed[,]" including moving to dismiss and participating in mediation. *Id*. at 414. It was not until nearly eight months into the lawsuit that the defendant moved to compel arbitration. *Id*. at 415. The plaintiff in *Morgan* argued that the defendant had waived its right to enforce the arbitration clause. *Id*. Utilizing a waiver test, which included a "prejudice" requirement unique to arbitration cases, the

district court agreed with the plaintiff that the defendant had waived its right, but this holding was overturned by the Court of Appeals. *Id*. at 415-16. In granting *certiorari*, the Supreme Court emphasized that the FAA's policy favoring arbitration was to make "arbitration agreements as enforceable as other contracts, but not more so." *Id*. at 418 (*citing Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)). The Court emphasized that courts "may not devise novel rules to favor arbitration over litigation[,]" and disapproved of the added prejudice requirement. *Id*. at 418.

Next, the Ninth Circuit took up the issue in *Armstrong v. Michaels Stores, Inc.*, where again a plaintiff argued the defendant waited too long to move for arbitration and waived its right to the arbitral forum. 59 F.4th at 1013. The Ninth Circuit recognized that *Morgan* overruled precedent in two respects: (1) that there is no "strong federal policy favoring *enforcement* of arbitration agreements"; and (2) party opposing arbitration need no longer demonstrate prejudice. *Id*. at 1014-15 (citation omitted, emphasis added).

Plaintiffs argue *Morgan* and *Armstrong* effectively "abrogates any strong federal policy in favor of arbitration[.]" Compel Oppo. at 1 n.1. But the Court does not read *Morgan* and *Armstrong* so broadly, and certainly cannot agree that any decision mentioning a "strong policy in favor of arbitration" is now overruled. This is especially true when Plaintiffs' specific examples of purportedly overruled authority are based on statutory interpretations of the FAA or the Convention, and did not involve the specific "novel" and "procedural" rule disavowed by *Morgan* and *Armstrong*.[1] Plaintiffs merely

---

[1] Three of the cases Plaintiffs identify are: (1) *Rogers v. Royal Caribbean Cruise Line et al*, 547 F.3d 1148 (9th Cir. 2008); (2) *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967); and (3) *Bautista*, 396 F.3d 1289 (11th Cir. 2005). *Rogers* concerned a statutory analysis of the Convention and FAA to determine whether the FAA's exclusion of seamen's employment contracts carried over to the Convention, ultimately ruling it did not. 547 F.3d at 1155. This is not a "novel" or "procedural" rule. *Prima Paint* involved the Supreme Court's determination that a party seeking to avoid enforcement of an arbitration clause must challenge the clause itself not the contract as a

repeat the same quote from *Armstrong* and declare *Morgan* and *Armstrong* have "completely changed the landscape with respect to cases alleged to arise under [the Convention][,]" which is both incorrect, as neither *Morgan* nor *Armstrong* involve an arbitration clause arising under the Convention, and lacks meaningful analysis into the cases allegedly overruled. The Court does not find this corollary argument convincing.

### 2. Whether the Agreements are "Void"

Plaintiffs argue the agreements are void because they do not comply with federal statutory requirements, and because they were presented in English instead of Plaintiffs' native language. Compel Oppo. at 18-19.[2]

Employment contracts for seamen have several statutory requirements. *See generally* Merchant Seamen Protection and Relief, 46 U.S.C. § 10101 *et seq*. Plaintiffs argue the agreements did not comport with requirements under 46 U.S.C. §§ 10601, 10502, and are accordingly deemed "void" under § 11107. Section 10601 concerns "Fishing agreements" and requires a "fishing agreement in writing" signed by each seaman and owner or representative of the fishing vessel "[b]efore proceeding on a voyage[.]" 46 U.S.C. § 10601(a).[3] Section 10502 concerns "Shipping articles

---

whole. 388 U.S. at 403-04. Far from being a novel procedural rule, *Prima Paint*'s decision "ultimately arises out of … the FAA's substantive command that arbitration agreements be treated like all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006). *Bautista* discusses the Convention's jurisdictional inquiry and interprets the "null and void" provision of the Convention's enforcement section. 398 F.3d at 1302.

[2] Plaintiffs also appear to make public policy arguments against enforcement of the arbitration clauses; however, public policy arguments are only available after arbitration. *See Lindo*, 652 F.3d at 1263 ("After arbitration, a court may refuse to enforce an arbitral award if the award is contrary to the public policy of the country.") (citation omitted).

[3] The Court notes the agreements signed by Plaintiffs do not appear to be "fishing agreements" covered under § 10601; by their terms they cover the period "[w]hile vessel

agreements" and contains almost identical requirements, modified to state the agreement shall be made in writing "before the seaman commences employment." 46 U.S.C. § 10502(a). Finally, § 11107 states, "An engagement of a seaman contrary to a law of the United States is void." 46 U.S.C. § 11107.

Citing to the Ninth Circuit's decision in *Harper v. U.S. Seafoods LP*, Plaintiffs argue §§10601 and 10502 are construed "literally" such that non-compliance with the requirements therein is grounds for finding an agreement void under § 11107. 278 F.3d 971, 975-77 (9th Cir. 2002); *see also Doyle v. Huntress, Inc.*, 301 F.Supp.2d 135, 145-47 (D. RI 2004) (finding same). The Court finds these cases inapplicable here for three reasons. First, neither *Harper* nor *Doyle* dealt with an employment agreement including an arbitration clause arising under the Convention. Second, as noted in *Bautista*, "The limited scope of the Convention's null and void clause must be interpreted to encompass only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale." 396 F.3d at 1302 (citing *DiMercurio v. Sphere Drake Ins. PLC*, 202 F.3d 71, 79 (1st Cir. 2000)). A statute purporting to make 'void' any agreement not comporting with United States federal law cannot "be applied neutrally on an international scale."

The *DiMercurio* court explained its ruling as follows:

> "The parochial interests of…any state, cannot be the measure of how the 'null and void' clause is interpreted. Indeed, by acceding to and implementing the treaty, the federal government has insisted that not even the parochial interests of the nation may be the measure of interpretation. Rather, the clause must be interpreted to encompass only those situations— such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale."

---

is enroute to shipyard for repair, and while vessel is in shipyard for repair[.]" Chen Decl. Ex. A at 1.a, Ex. B at 1.a (same). This does not ultimately impact the Court's analysis.

202 F.3d at 80 (citation omitted). *Cf. Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 515-19 (1974) ("We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts.").[4] Accordingly, the Court declines to find non-conformity with § 10502 makes the agreements void as that term is used in the Convention.

Finally, noted above, Plaintiffs' arguments regarding *Morgan* and *Armstrong* do not assist them against *Bautista*'s interpretation of the null and void provision. Plaintiffs seem to acknowledge that precedent in *Prima Paint* and *Buckeye* would foreclose their void arguments under a standard FAA analysis. Still, Plaintiffs argue because the "strong federal policy favoring arbitration" has been overruled, this Court should disregard *Prima Paint* and *Bautista* and rely on contrary, older precedent.

Specifically, Plaintiffs point to *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, a Ninth Circuit case distinguishing *Prima Paint* and holding a court must analyze whether a contract was formed before determining whether to compel arbitration. 925 F.2d 1136 (9th Cir. 1991). Even assuming Plaintiffs' claims about *Armstrong* and *Morgan*'s reach is true, *Three Valleys* is distinguishable. In *Three Valleys*, the plaintiffs argued the arbitration clause was void because the person who signed the contract on their behalf lacked authority to contractually bind the plaintiffs. *Id*. at 1138. *Three Valleys* does not stand for the broad proposition that any arguments relating to 'void' contracts must be adjudicated first, but rather "*Three Valleys* [] limited *Prima Paint* [severability holding] to challenges seeking to avoid or rescind a contract—not to

---

[4] *Cf. Rogers*, 547 F.3d at 1156 n.2 ("Section 10317 renders void any stipulation in an agreement purporting to deprive a seafarer of a remedy to which the seafarer otherwise would be entitled…Because Rogers and Kar have not been deprived of any statutory remedy, we do not reach the question of whether Article V(1)(a) of the Convention would allow our courts to refuse to recognize and enforce an arbitral award effectuating such a deprivation.") (internal citation and quotation marks removed).

challenges going to the very existence of a contract that a party claims never to have agreed to." *Sanford v. Memberworks, Inc.*, 483 F.3d 956, 963 (9th Cir. 2007).

It is also important to note that *Armstrong* and *Morgan*, *Buckeye* and *Prima Paint*, *Three Valleys* and *Sanford* are all cases discussing Chapter 1 of the FAA—while they are helpful to understanding federal landscape regarding arbitration clauses, they are not *necessarily* directly applicable to arbitration agreements arising under the New York Convention. Both parties made arguments regarding *Prima Paint*'s severability holding and its impact on the case but did not evaluate whether *Prima Paint* could be applied to cases falling under the Convention. While application of *Prima Paint* and *Buckeye* would certainly be decisive in favor of compelling arbitration, the Court need not decide on this ground.

Given the Court does not agree that *Morgan* and *Armstrong* invalidate *Rogers* or *Bautista*, Plaintiffs' argument does not prevail. Here, the Plaintiffs do not argue their signatures were obtained by fraud, duress, or mistake. Accordingly, the Court concludes the arbitration clauses in the employment agreements are enforceable, and "shall" enforce them pursuant to the Convention.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion to Remand and **GRANTS** Defendant's Motion to Compel Arbitration. The Court will **STAY** the case pending completion of arbitration. Parties are **ORDERED** to file a Joint Status Update with the Court no later than five (5) days after arbitration is complete.

**IT IS SO ORDERED.**

Dated: March 26, 2024

_____
HON. ROGER T. BENITEZ
United States District Judge